UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON RENEE ASHLEY,                         Case No. 17-11821

      Plaintiff,                         George Caram Steeh
v.                                           United States District Judge

COMMISSIONER OF SOCIAL                       Stephanie Dawkins Davis
SECURITY,                                    United States Magistrate Judge

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 17)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On June 8, 2017, plaintiff Sharon Renee Ashley filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George Caram Steeh referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 16, 17).

B.     Administrative Proceedings

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on March 6, 2015, alleging disability beginning on June 15, 2014.  (Tr. 28).[1]  The claims were initially disapproved by the Commissioner on August 7, 2015.  (*Id.*).  Plaintiff requested a hearing and on December 14, 2016, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the case *de novo*.  (Tr. 28-37). In a decision dated January 19, 2017, the ALJ found that plaintiff was not disabled. (Tr. 37).  Plaintiff requested a review of this decision.  (Tr. 23-24).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 24, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr. "

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born October 27, 1960, was 53 years old on the alleged disability

onset date.  (Tr. 51).  She has past relevant work as a sales marketing

representative, administrative clerk, and customer service representative.  (Tr. 36).

The ALJ applied the five-step disability analysis and found at step one that plaintiff

had not engaged in substantial gainful activity since June 15, 2014, the alleged

onset date.  (Tr. 30).  At step two, the ALJ found that plaintiff's morbid obesity,

sleep apnea, degenerative joint disease of the bilateral hips and sacroiliac joints,

and asthma were "severe" within the meaning of the second sequential step.  (Tr.

30).  However, at step three, the ALJ found no evidence that plaintiff's

impairments singly or in combination met or medically equaled one of the listings

in the regulations.  (Tr. 32).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) with the following
> additional limitations: She can occasionally climb stairs,
> crouch, crawl, kneel, stoop or bend.  She cannot work
> near hazards such as dangerous moving machinery or
> unprotected heights.  She cannot climb ladders, ropes or

> scaffolds.  She must avoid exposure to pulmonary
> irritants so she must work in a clean air environment.

(Tr. 32-33).  At step four, the ALJ found that plaintiff is capable of performing past

relevant work as generally performed.  (Tr. 36).  At step five, the ALJ denied

plaintiff benefits because she found that plaintiff had not been under a disability

from June 15, 2014, through the date of the decision.  (Tr. 36).

      B.    <u>Plaintiff's Claims of Error</u>

 Plaintiff raises three issues on which she seeks remand of the

Commissioner's decision: (1) that the ALJ improperly evaluated the effects of her

obesity on her impairments, (2) that the ALJ did not include any limitations due to

sleep apnea in the RFC, and (3) that the matter should be remanded under sentence

six of 42 U.S.C. § 504(g) to consider new and material evidence.  (Dkt. 16).

As to the first argument, plaintiff notes that the regulations require the ALJ

to analyze the effect of obesity on a person's RFC and to consider the effects of

obesity at every step of the sequential evaluation.  (*Id.* at p. 13-14).  Plaintiff

contends that it is not clear that the ALJ considered obesity in the RFC finding.

(*Id.* at p. 14).  For example, plaintiff avers that because of the weight on her knees

due to obesity, her legs will buckle and she feels she cannot support herself.  (*Id.* at

p. 14).  According to plaintiff, the ALJ failed to analyze how obesity effected

plaintiff's other impairments and did not address plaintiff's overactive

bladder/urinary incontinence anywhere in the decision.  (*Id.* at p. 15).  Plaintiff was

diagnosed with overactive bladder and was prescribed Detrol XL, but at the time of

the hearing she was still having significant problems, such as needing to use the

restroom every hour and needing to wear a diaper.  (*Id.*, citing Tr. 370).  Plaintiff

described her incontinence as a product of her weight.  As another example of the

ALJ's failure to consider obesity along with her impairments, the ALJ emphasized

plaintiff's normal gait and station despite her weight, but plaintiff contends that

had the ALJ given more consideration to her testimony that her weight makes her

feel like her legs will give out, the ALJ might have found her testimony more

credible.  (*Id.* at p. 16).

Plaintiff also contends that her obesity was not considered in assessing her

treating physician, Dr. Alsaadi's, opinions, to which the ALJ gave very little

weight.  (*Id.* at p. 17).  Both of Dr. Alsaadi's opinions list plaintiff's obesity as a

diagnosis.  However, the ALJ found that Dr. Alsaadi's opinions were inconsistent

with his treatment notes.  Plaintiff contends that this finding is incorrect because

Dr. Alsaadi's treatment notes repeatedly make clear that plaintiff was morbidly

obese.  (*Id.*).  Plaintiff argues that Dr. Alsaadi's opinion that plaintiff is morbidly

obese is also supported by the record: plaintiff herself attributed her incontinence

to obesity and Dr. Alsaadi opined that plaintiff would need help bathing and

toileting because of incontinence.  (*Id.* at p. 18).  The ALJ did not discuss Dr.

Alsaadi's opinion that plaintiff would need assistance, which, according to plaintiff, demonstrates that the ALJ did not consider her incontinence and obesity in weighing the opinions.  Therefore, the ALJ did not provide good reasons for discounting Dr. Alsaadi's opinion.

As to plaintiff's second argument—that the ALJ failed to include limitations in the RFC due to sleep apnea—plaintiff argues that the evidence establishes limitations that should have been included in the RFC.  Plaintiff points to her testimony demonstrating that her sleep apnea causes her to be drowsy during the day, unable to think clearly, and needing to take naps.  (*Id.* at p. 19-20).[2]  Plaintiff says her obesity and sleep apnea are "intrinsically tied," and the ALJ's failure to consider sleep apnea when assessing the RFC indicates a lack of compliance with the obesity regulations.  (*Id.* at p. 21-22).

In her third argument, plaintiff asserts that she is entitled to a sentence six remand because of new evidence from Dr. Laker that became available in February 2017, after the ALJ's January 2017 decision.  She asserts that Dr. Laker's new evidence is material because the findings include significant tricompartmental osteoarthritis in both knees, along with joint space narrowing and other abnormalities.  Dr. Laker also observed that, even though plaintiff was using a

---

[2] In this section of her brief, plaintiff is citing to the supplemental transcript at docket no. 15, which contains pages missing from the hearing transcript at docket no. 12.

rolling walker, she was ambulating with a limp.  (*Id.* at p. 23).  These findings

suggest that plaintiff could not stand for six hours in an eight-hour workday,

precluding light work.  Plaintiff also contends that the imaging results present a

"reasonable possibility" that her condition meets Listing 1.02.  Plaintiff states that

she had good cause for not submitting the evidence sooner: the evidence did not

exist at the time the ALJ made her decision.

      C.    <u>Commissioner's Motion for Summary Judgment</u>

      The Commissioner argues first that the ALJ properly determined plaintiff's

RFC.  The Commissioner contends that the ALJ did evaluate plaintiff's obesity,

discussing it throughout the opinion.  (Dkt. 17, at p. 4-5).  To the extent plaintiff is

arguing that the RFC should have greater limitations due to her obesity, plaintiff

fails in her burden of establishing that she had additional restrictions because the

only evidence in the record plaintiff uses to support her arguments is her own

testimony.  (*Id.* at p. 5-6).  Further, the Commissioner notes that the ALJ

incorporated restrictions from plaintiff's obesity because the ALJ relied on State

agency physician, Dr. Khalid, who considered obesity in determining the degree of

plaintiff's functioning.  (*Id.* at p. 7).

      As to plaintiff's incontinence, the Commissioner points out that there is no

objective evidence in the record demonstrating functional limitations due to

incontinence.  (*Id.* at p. 8).  Further, the ALJ found plaintiff's own statements not

entirely supported by the record.  Dr. Khalid considered plaintiff's bladder

disorder, but indicated that there were no concerns raised by plaintiff's June 2015

pelvic ultrasound.  (*Id.* at p. 8-9); Tr. 135).

      In response to plaintiff's argument that the ALJ did not properly assess her

treating physician's opinion in light of her obesity, the Commissioner contends that

the ALJ gave good reasons for discounting the opinion: the ALJ found that the

functional limitations assessed in the doctor's opinion were inconsistent with the

state agency's assessment, plaintiff's conservative treatment, her unremarkable

performance on physical examinations, and Dr. Alsaadi's progress notes that

described her as having normal strength and gait.  (*Id.* at p. 12; Tr. 35).

      According to the Commissioner, the ALJ did not err in failing to include

limitations due to sleep apnea in the RFC, because, although plaintiff was

diagnosed with life-threatening REM exacerbated obstructive sleep apnea, the

record also indicates that the condition was controlled by use of a CPAP machine.

(*Id.* at p. 15; Tr. 30, 368).  The ALJ did not find plaintiff's testimony credible,

including the testimony about feeling drowsy during the day because of sleep

apnea, and plaintiff does not challenge the credibility determination.  (*Id.* at p. 16).

Moreover, the record indicates that plaintiff was alert and oriented to three or four

spheres, her affect and/or mood was appropriate, her judgment was good, and her

memory was normal.  (*Id.* at p. 17; Tr. 317, 325, 344, 348, 353, 358, 501, 505, 509, 513, 517).

Finally, the Commissioner asserts that plaintiff's newly-submitted evidence does not entitle her to a sentence six remand.  The Commissioner contends that the new evidence is not material because it merely shows a worsening of condition. (*Id.* at p. 19).  Plaintiff also failed to establish good cause for not submitting the evidence sooner because a claimant does not show good cause simply by stating that the report came into existence after the date of the ALJ's decision.  (*Id.* citing *Willis v. Sec'y of Health & Human Servs*., 727 F.2d 551, 554 (6th Cir. 1984)).

D.    <u>Plaintiff's Reply</u>

In reply, plaintiff reiterates her argument that the ALJ failed to properly consider her obesity in determining the RFC, and that the ALJ's failure to discuss urinary incontinence is an example of the ALJ's failure to consider obesity.  (Dkt. 18, at p. 2).  Plaintiff contends that the fact that the ALJ relied on Dr. Khalid's agency opinion does not remedy the ALJ's failure.  First, plaintiff points out that it is not clear whether Dr. Khalid associated her urinary symptoms with obesity.  (*Id.* at 3-4).  Second, it was not until October 2015 that Dr. Trist noted that her obesity was likely the cause of the urinary symptoms, while Dr. Khalid's opinion came in August 2015.  (*Id.* at p. 4).

Plaintiff argues that the ALJ erred in failing to consider her statements on the effects of sleep apnea.  (*Id.* at 6).  She says the fact that plaintiff's sleep study indicated her condition was controlled with the CPAP machine does not take away from plaintiff's allegations that since the study she had been diagnosed with GERD, which caused her to feel like she was going to asphyxiate if she left the CPAP mask on during the night.  Without the mask on at night her sleep apnea is life threatening, and she spends the next day being unable to concentrate and tired. (*Id.* at p. 6-7).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.  Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

   If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

   C.   Analysis and Conclusions

      1.   Obesity

Social Security Ruling 02-1p, 2002 WL 34686281, addresses the Agency's

responsibility to assess the severity and limitations arising from a claimant's

obesity.  As noted by the Sixth Circuit, it would be "'a mischaracterization to

suggest that Social Security Ruling 02-1p offers any particular procedural mode of

analysis for obese disability claimants'…[i]nstead [the ruling] provides that

'obesity, in combination with other impairments, 'may' increase the severity of the

other limitations.'" *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443

(6th Cir. 2010) (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir.

2006)).  Thus, the ALJ's responsibility is to "consider the claimant's obesity, in

combination with other impairments, at all stages of the sequential

evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir.

2009).

The Ruling also provides guidance for evaluating a claimant's obesity

during the sequential evaluation.  For example, in determining a claimant's RFC

the Ruling provides,

> An assessment should also be made of the effect obesity
> has upon the individual's ability to perform routine
> movement and necessary physical activity within the
> work environment.  Individuals with obesity may have
> problems with the ability to sustain a function over time.
> As explained in SSR 96-8p ("Titles II and XVI:
> Assessing Residual Functional Capacity in Initial
> Claims"), our RFC assessments must consider an
> individual's maximum remaining ability to do sustained
> work activities in an ordinary work setting ona [sic]
> regular and continuing basis.  A "regular and continuing
> basis" means 8 hours a day, for 5 days a week, or an
> equivalent work schedule.  In cases involving obesity,
> fatigue may affect the individual's physical and mental
> ability to sustain work activity.  This may be particularly
> true in cases involving sleep apnea.

SSR 02-1P (2002 WL 34686281, at *6) (internal footnote omitted).  The Ruling

cautions, however,

we will not make assumptions about the severity or
functional effects of obesity combined with other
impairments.  Obesity in combination with another
impairment may or may not increase the severity or
functional limitations of the other impairment.  We will
evaluate each case based on the information in the case
record.

*Id.*  Thus, the Ruling does not relieve the plaintiff's burden of marshaling

competent medical evidence establishing work-related limitations.  "Plaintiff [has]

the burden of showing specifically how [her] obesity, in combination with other

impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC

determination."  *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *7 (W.D.

Mich. July 11, 2016).

Contrary to plaintiff's argument, it is not clear that the ALJ failed to

consider her obesity throughout the sequential analysis.  At Step Two, the ALJ

identified obesity as one of plaintiff's severe impairments.  (Tr. 30).  In her

discussion of impairments, the ALJ noted plaintiff's Body Mass Index (BMI) of

57.1 in June 2015, and found that plaintiff's normal gait and station were "notable

in light of her morbid obesity throughout the relevant period."  (Tr. 31).  In a

footnote discussing the obesity diagnosis in general, the ALJ acknowledged that,

"[i]n combination with the claimant's other severe impairments, namely her sleep

apnea and musculoskeletal impairments, the claimant's obesity would reasonably

be expected to limit their [sic] ability to do basic work activities, such that it is a

severe impairment." (*Id.* at n.1). Additionally, the ALJ discussed plaintiff's obesity in relation to the Listings, noting her obligation to consider obesity, and determined that the evidence does not support a finding that plaintiff's obesity contributes to any severe impairment that would cause that impairment to meet a listing. (Tr. 32). Next, in assessing plaintiff's RFC, the ALJ expressly states that she "accommodated the symptoms of the claimant's morbid obesity and degenerative joint disease of the bilateral hips and sacroiliac joints with the exertional, postural and environmental limitations assessed herein." (Tr. 36). Indeed, at the start of her discussion of the objective medical evidence, the ALJ noted she had already discussed the medical evidence as it related to the treatment of plaintiff's severe impairments, which included discussion of plaintiff's obesity. (Tr. 34, 30, 32).

The ALJ also indirectly discussed plaintiff's obesity when she listed plaintiff's subjective complaints stemming from her obesity. For example, the ALJ discussed plaintiff's allegations that she has difficulty standing and walking; that she can stand for only one minute at a time, and that she requires a cane or walker to ambulate. (Tr. 33). Plaintiff attributed these allegations to her weight. (Tr. 55-58). The ALJ determined, however, that plaintiff's subjective complaints were only partially consistent with the objective medical evidence. (Tr. 34). Plaintiff does not contest this determination. The ALJ's discussion of plaintiff's complaints

related to her impairments and their connection to her obesity in assessing the
RFC, along with her comparison of plaintiff's complaints to the objective medical
evidence, suggests that the ALJ did consider how plaintiff's obesity impacted her
ability to perform work activities. *See Austin v. Comm'r of Soc. Sec.*, 2017 WL
2644099, at *5 (W.D. Mich. June 20, 2017) (finding no error in consideration of
obesity where ALJ identified the plaintiff's alleged symptoms related to obesity
and stated that the ALJ considered obesity in the RFC); *see also Rios v. Comm'r of
Soc. Sec.*, 2016 WL 6310280, at *5 (W.D. Mich. Oct. 28, 2016) ("The ALJ
recognized that Plaintiff was obese at step two and analyzed the entire record in
assessing Plaintiff's RFC.  The Court finds the ALJ's RFC determination
sufficiently accounts for Plaintiff's obesity and the limitations reasonably imposed
by such.").

Additionally, the undersigned agrees with the Commissioner that the ALJ
considered plaintiff's obesity in relying on State agency reviewing physician, Dr.
Khalid, who considered plaintiff's obesity in assessing plaintiff's RFC.  (Dkt. 17,
at p. 7).  In *Bledsoe v. Barnhart*, 165 Fed. Appx. 408 (6th Cir. 2006), the Sixth
Circuit offered practical assistance in applying SSR 02-1p finding that the ALJ
properly considers the claimant's obesity by making "explicit mention of [the
claimant's] obesity in his finding of facts" or by "credit[ing] an expert's report that
considers obesity."  *Id*. at 412; *see also Coldiron v. Comm'r of Soc. Sec.*, 391

Fed.Appx. 435, 443 (6th Cir. 2010) ("Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work.").  Both *Bledsoe* and *Coldiron* held that as long as the ALJ relies on opinions of physicians or consultative experts who took the claimant's obesity into account in rendering such opinions, there is no need for the ALJ to detail separately his or her own consideration.  *Bledsoe*, 165 Fed. Appx. at 412; *Coldiron*, 391 Fed. Appx. at 443.

Here, in addition to the ALJ's express discussion of obesity in the decision, the ALJ gave great weight to State agency physician, Dr. Khalid's opinion at the initial level.  Dr. Khalid opined that obesity was one of plaintiff's severe impairments, and notes that plaintiff was 65 inches tall and weighed 343 pounds. (Tr. 132).  Dr. Khalid then went on to determine that plaintiff has the RFC to perform light work consistent with the ALJ's decision.  (Tr. 35; 136-139).  *See King v. Comm'r of Soc. Sec.*, 2015 WL 12697639, at *4 (E.D. Mich. Dec. 3, 2015) (No error in ALJ's failure to discuss obesity where ALJ relied upon non-reviewing state agency physician's opinion at the initial level, which cited plaintiff's obesity and rendered an RFC).  Therefore, there is no reversible error in the ALJ's consideration of obesity.

Plaintiff's argument here is further diminished because of her failure to cite to objective medical evidence in the record establishing the effect her obesity has on her ability to work, or the effect her obesity has in combination with her other impairments.  In the first four steps of the analysis, plaintiff carries the burden of proving that she is disabled within the regulations.  *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed.Appx. 468, 474 (6th Cir. 2016) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010)).  Importantly, plaintiff has not identified any additional limitations that should have been incorporated, but were not.  This absence of elaboration "likely stems from the fact that [plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity." *Essary v. Comm'r of Soc. Sec.*, 114 Fed.Appx. 662, 667 (6th Cir. 2004).  There is "scant evidence" in the record that plaintiff's obesity causes her physical limitations.  *See Grech v. Colvin*, 2015 WL 2354802, at *3 (E.D. Ky. May 15, 2015) ("In fact, other than a passing reference to Plaintiff being obese or providing a record of her height, weight and BMI on her medical charts, her providers provided no specific discussion of Plaintiff's obesity or how it impacts her functioning.").  "[A]ny findings regarding the effects of obesity must be based on evidence in the record."  *Gipson v. Colvin*, 2016 WL 4473796, at *3 (E.D. Ky. Aug. 22, 2016).  The ALJ may not make assumptions about the severity or functional effects of obesity, otherwise he or she would be required to render a

medical opinion, which is not permitted.  *Id.* (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).

While plaintiff points to evidence that she was diagnosed as morbidly obese by Dr. Alsaadi (Dkt. 16, at pg. 17), this evidence does not demonstrate that her obesity imposed any additional work-related limitations.  The only other evidence plaintiff advances to establish functional limitations is her own testimony. (*Id.* at p. 15-16).  Plaintiff does not cite any objective evidence or medical opinions which indicate that her obesity imposes any work-related limitations in combination with her other impairments, implying that the ALJ should have reached certain medical conclusions on her own concerning this issue.  *Foss v. Comm'r of Soc. Sec.*, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017).  As stated above, under SSR 02-1p, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." Rather, the ALJ evaluates the case based on the evidence in the record.  Moreover, the undersigned acknowledges the principle that it is impermissible for the ALJ to "play doctor" and make their own independent medical findings.  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Bond v. Colvin*, 2014 WL 470843, at *6 (S.D. Ohio Feb. 6, 2014), *adopted by* 2014 WL 897154 (S.D. Ohio Mar. 6, 2014); *Woodruff v. Astrue*, 2013 WL 821336, at *11 (N.D. Ohio Mar. 5, 2013) (citing *Simpson v. Commissioner*, 2009 WL 2628355, at *12 (6th Cir. Aug. 27,

2009)); *Reed v. Sec'y of Health & Human Servs.*, 804 F. Supp. 914, 919 (E.D. Mich. 1992).

Thus, even if it were assumed that the ALJ erred in her discussion of plaintiff's obesity in fashioning the RFC, the error would not call into question the substantiality of the evidence supporting the ALJ's decision. *See  Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless).

Plaintiff is correct that the ALJ did not discuss the effect her incontinence has on her ability to function, either singly or in combination with obesity and other impairments.  To the extent that this is error, the error is harmless.  It is well established that the claimant bears the burden of establishing the severity of the impairments that determine her RFC.  *See Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir.1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments.  This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments."* ) (emphasis added).  Here, although the record contains a diagnosis of overactive bladder, mixed urinary incontinence, and microscopic hematuria (Tr. 370), plaintiff offers no evidence,

other than her own statements, regarding the functional impact of the impairment. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder ... does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits ... plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").  Dr. Khalid considered plaintiff's bladder problems and rendered his opinion on August 6, 2015, while Dr. Triest treated plaintiff for bladder problems and stated on October 8, 2015 that plaintiff's weight likely had a profound impact on her urinary symptoms.  (Tr. 139, 376-77). In some circumstances this timing could be cause for concern.  However, as discussed above, any failure to consider plaintiff's bladder problems is harmless here because there is no medical opinion in the record opining on functional limitations resulting from her bladder problems, including Dr. Triest's. Accordingly, plaintiff has not sustained her burden of proof with respect to whether her incontinence merits further limitations in the RFC.

      2.    Treating Physician

Plaintiff argues that the ALJ did not give "good reasons" for discounting treating physician Dr. Alsaadi's opinion, arguing that his opinions are consistent with his treatment notes and plaintiff's subjective complaints.  However, a review

of the ALJ's decision demonstrates that the ALJ did provide good reasons for discounting Dr. Alsaadi's opinion, and giving the opinion very little weight.

The opinion of a treating physician should be given controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).  The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.  The reasons provided must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must consider specific factors to resolve the question of what weight will be assessed.  Those factors include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.; see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).

> This requirement is not simply a formality; it is to
> safeguard the claimant's procedural rights.  It is intended

> "to let claimants understand the disposition of their
> cases, particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore
> might be especially bewildered when told by an
> administrative bureaucracy that [ ] he is not.
> Significantly, the requirement safeguards a reviewing
> court's time, as it "permits meaningful" and efficient
> "review of the ALJ's application of the [treating
> physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted).  "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart*, 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

The ALJ determined that Dr. Alsaadi's opinion was not entitled to controlling weight because the opinion was inconsistent with the objective medical evidence in the record and inconsistent with his own treatment notes.  Specifically, the ALJ stated,

> Ali Alsaadi, M.D. opined that the claimant can sit, stand
> and walk for a combined total of less than one hour in an
> eight-hour day (11F).  Dr. Alsaadi also states that the
> claimant cannot lift so much as five pounds regularly,
> requires a ten-minute break each hour, would miss four
> or more days of work each month due to her
> impairments, and would need to lie down for a
> substantial period during the day.  Dr. Alsaadi also states
> that the claimant is unable to work at any job.  This
> source is an acceptable medical source who offered their
> opinion in the context of a treating relationship with the
> claimant.  Accordingly, the undersigned considered this
> opinion in accordance with SSR 96-2p in addition to all

26

other applicable Social Security Administration rules and regulations.  As for the opinion that the claimant is unable to work, the undersigned notes that a determination regarding the claimant's ability to work is an administrative finding reserved to the Commissioner.  See SSR 96-Sp.  Nonetheless, the undersigned has considered all of the doctor's medical opinion in accordance with SSR 96-5p.  The undersigned notes that this source's opinion is inconsistent with other evidence in the record including the medical opinions of the State agency consultants, and accordingly is not entitled to controlling weight.  This source's opinion is further inconsistent with much of the objective evidence in the record, including without limitation the claimant's conservative treatment history as discussed at length herein and her unremarkable performance on physical examination as discussed at length herein.  It is further inconsistent with Dr. Alsaadi's own treatment notes, which describe the claimant as having normal muscle tone and strength and a normal gait and station (5F).  In consideration thereof, the undersigned afforded this source's opinion very little weight.

(Tr. 35).  In discussing the inconsistencies between Dr. Alsaadi's opinions and the other evidence in the record, the ALJ did not err in determining that the opinions were not entitled to controlling weight, as the determination is supported by substantial evidence.  *See Wilson*, *supra*.  For example, Dr. Alsaadi opined that plaintiff could sit, stand, or walk less than one hour in an eight-hour work day and could never lift up to five pounds or more.  (Tr. 381).  However, the Stage agency physician, Dr. Khalid, opined, after reviewing the evidence available in the record, that plaintiff could sit, stand, or walk about six hours in a work day, and could lift twenty pounds occasionally and ten pounds frequently.  (Tr. 138).  Although Dr.

Alsaadi stated in his Physical Capacity Assessment that plaintiff's impairments were due to shortness of breath and unsteady gait (Tr. 381), Dr. Alsaadi's treatment notes do not align with that conclusion.  For example, on numerous occasions Dr. Alsaadi noted that plaintiff's gait was normal and that she had normal musculoskeletal tone and strength.  (Tr. 499, 502, 505, 509, 513, 517).  Dr. Alsaddi also noted that plaintiff reported no shortness of breath while walking and that she had "good air movement" in the lungs.  (Tr. 498-99, 502, 504-05, 508-09, 513, 516-17).  These inconsistencies support the ALJ's determination.

Plaintiff points out, however, that Dr. Alsaadi's opinion that plaintiff is morbidly obese is consistent with his treatment notes in which he states that plaintiff is morbidly obese.  Yet, this point is neither here nor there as the ALJ did not contest that plaintiff is morbidly obese, and in fact found her morbid obesity to be a severe impairment.  Plaintiff also points out that Dr. Alsaadi's opinion from 2015, apparently a report to the Michigan Department of Health and Human Services (Dkt. 17, at p. 13), indicated that plaintiff needed assistance with toileting, bathing, and other household chores, and the ALJ did not discuss this portion of the opinion.  (Tr. 518).  However, as demonstrated above, the ALJ noted that Dr. Alsaadi's opinion is inconsistent with the other medical evidence and his own treatment notes.  Dr. Alsaadi's opinion that plaintiff needs assistance is inconsistent with Dr. Alsaadi's treatment notes, for example, that plaintiff has

28

normal muscle strength and gait (Tr. 499, 502, 505, 509, 513, 517).  It is also

noteworthy that Dr. Alsaadi makes no mention of plaintiff's needing assistance

with these activities before or after this December 2015 opinion.  Moreover, Dr.

Alsaadi provides no commentary on why plaintiff needs assistance.  *White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements

from physicians are properly discounted by ALJs"); *Buxton v. Halter*, 246 F.3d

762, 773 (6th Cir. 2001) (The ALJ "is not bound by conclusory statements of

doctors, particularly where they are unsupported by detailed objective criteria and

documentation.").  As such, the undersigned finds no error in the ALJ's failure to

specifically discuss the opinion that plaintiff needs assistance with daily living.

Having determined that Dr. Alsaadi's opinions were entitled to less than

controlling weight, the ALJ then must consider specific factors to determine what

weight should be given to the opinions.  The ALJ here acknowledged the treating

relationship between Dr. Alsaadi and plaintiff, and in discussing the various

inconsistencies in Dr. Alsaadi's opinions, the ALJ attacked both the consistency

and supportability of the opinions.  The ALJ did not discuss specifically the nature

and extent of the treating relationship, or any specialization in which Dr. Alsaadi

practices.  However, failure to discuss these two factors does not amount to

harmful error.  As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414

Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375

Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a

procrustean bed, requiring an arbitrary conformity at all times." In *Francis,* the

ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2),

but the court held that he did not have to do an exhaustive factor-by-factor

analysis. *Id.* at 804-05. As long as the goal of the regulation is met, i.e. providing

a clear understanding of the reasons for the weight given to a treating physician's

opinion, any procedural error will be harmless. As demonstrated above, the goal

of the regulation has been met here.

For the foregoing reasons, the undersigned finds that the ALJ's weight

determination here is supported by substantial evidence, and thus should be

affirmed.

### 3.    Sleep Apnea

Plaintiff contends that the ALJ erred in not including any mental limitations

in the RFC to account for her sleep apnea. However, plaintiff has not pointed to

any objective medical evidence in the record establishing functional limitations

due to sleep apnea, whether singly or in combination with her obesity. Indeed,

there is no such medical evidence.

In June 2015 plaintiff underwent a sleep study, during which the physician

witnessed "apneic spells." (Tr. 358). Although the physician described plaintiff's

complaints, which included feeling tired and having problems with concentration,

the physician did not opine on any functional limitations. (Tr. 357). Throughout Exhibit 12F of the record, Dr. Alsaadi notes plaintiff's sleep apnea diagnosis, but provides no further commentary on the diagnosis. (Tr. 384-517). In an August 2015 follow-up visit with Dr. Alsaadi, Dr. Alsaadi noted that plaintiff received her CPAP machine and would begin using it that day. (Tr. 505). Plaintiff underwent a sleep study in July 2015. (Tr. 365-68). In discussing the findings, the physician noted, 'The above study is consistent with a Life Threatening REM exacerbated Obstructive Sleep Apnea Syndrome controlled by nasal CPAP." (Tr. 368). The physician further noted that plaintiff tolerated the CPAP well after heated humidity was added. (*Id.*). According to the physician, disturbance in plaintiff's sleep may have been due to her first adaptation response to the CPAP machine. (*Id.*). These findings do not suggest that plaintiff has functional limitations due to sleep apnea, either singly or in combination with her other impairments. Instead, these findings suggest that plaintiff's sleep apnea is well-controlled with the use of her CPAP machine. Where there is a lack of functional limitations in the record due to an impairment, failure to include any functional limitations in the RFC is not error. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec.*, 2015 WL 7307998, at

*5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary.").

As support for her argument, plaintiff again relies on her subjective complaints. However, the ALJ determined that her testimony was not fully supported by the objective evidence. The ALJ is correct. Plaintiff states that her sleep apnea is not well-controlled by her CPAP machine because her GERD causes her to have to take off the face mask. (Dkt. 16, at p. 19). But even if this were the case, this does not make up for the fact that there is no medical opinion discussing functional limitations from sleep apnea, and other records show that her sleep apnea was controlled with the use of the CPAP machine.

While on the one hand, the ALJ is to consider the effect obesity has on impairments, on the other hand, the ALJ is not to guess at the effect; rather, there must be evidence in the record establishing the connection and limitations. There is no medical opinion opining on functional limitations caused by the sleep apnea. It is not for the ALJ to play doctor and guess at limitations. Therefore, the undersigned concludes that any error in addressing sleep apnea is harmless.

4.      Sentence Six

"Sentence six of § 405(g) addresses situations where a Claimant submits

new evidence that was not presented to the ALJ but would alter the ALJ's ultimate

decision." *Courter v. Comm'r of Soc. Sec*., 479 Fed. Appx. 713, 725 (6th Cir.

2012).  Sentence Six provides that the court may at any time

> order additional evidence to be taken before the
> Secretary, but only upon a showing that there is new
> evidence which is material and that there is good cause
> for the failure to incorporate such evidence into the
> record in a prior proceeding, and the Commissioner of
> Social Security shall, after the case is remanded, and after
> hearing such additional evidence if so ordered, modify or
> affirm the Commissioner's findings of fact or the
> Commissioner's decision, or both.

42 U.S.C. § 405(g).  Evidence is new if it was not in existence at the time of the

hearing.  *See Foster*, 279 F.3d at 357.  "Material evidence is evidence that would

likely change the Commissioner's decision." *Bass*, 499 F.3d at 513 (citation

omitted).

Plaintiff's evidence submitted after the ALJ entered her decision is new.

The medical record did not exist until February 17, 2017, about one month after

the ALJ issued her decision.

However, based on a review of the additional evidence the undersigned

suggests that remand pursuant to sentence six of 42 U.S.C. § 405(g) is not

warranted.  As a threshold matter, plaintiff has not demonstrated good cause for

failing to introduce Dr. Laker's medical report in a timely fashion.  Plaintiff

mistakenly assumes that good cause has been established simply because the

opinion was completed more than one month after the ALJ issued her decision.

(Dkt. 16, at p. 23).  Plaintiff's good cause argument consists of one sentence:

"Ashley had good cause for not submitting this evidence earlier, as it simply did

not exist at the time the ALJ made her decision."  (*Id.*).  However, the fact that this

record was obtained after entry of the ALJ's decision, which was issued more than

one month after the administrative hearing, does not establish "good cause."

*See Perkins v. Apfel*, 14 Fed.Appx. 593, 598 (6th Cir. 2001) ("The mere fact that

the evidence at issue was not created until nine months after the ALJ's decision ...

does not establish good cause.").  Plaintiff has the burden of providing evidence

demonstrating the existence of a disability, *Key v. Callahan*, 109 F.3d at 274, and

she offers no valid reason for failing to procure the medical record prior to the

hearing, which precludes satisfaction of the "good cause" requirement.  *Oliver v.

Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Hale

v. Berryhill*, 2017 WL 3130578, at *9 (M.D. Tenn. July 24, 2017), *report and

recommendation adopted*, 2017 WL 4176276 (M.D. Tenn. Sept. 20, 2017)

(Plaintiff did not demonstrate good cause for not submitting a second Medical

Source Statement prior to the ALJ's decision, where the only showing of good

cause was that the Statement did not yet exist); *Bass v. McMahon*, 499 F.3d 506,

34

513 ("[P]laintiff's counsel did not seek to have the record remain open to submit the evidence here provided, which in and of itself shows a lack of good cause.").

Equally problematic is the fact that the new evidence does not appear to be material. According to plaintiff, Dr. Laker's findings suggest that plaintiff would be precluded from work that required her to stand at least six hours in a work day because plaintiff's use of a walker to stand is work preclusive. (Dkt. 16, at p. 23). She also contends, without providing any analysis, that the imaging results "present a reasonable possibility" that plaintiff's condition meets Listing 1.02.

In this medical record, Dr. Laker reports that plaintiff has significant tricompartmental osteoarthritis in both knees. (Tr. 11). In Dr. Laker's assessment, he states that he discussed with plaintiff surgical and non-surgical treatment options, and discussed the benefits of weight loss and low-impact aerobic exercise. (*Id.*). Dr. Laker prescribed formal physical therapy and recommended that plaintiff return in 2-3 months for an evaluation. (*Id.*).

The undersigned agrees with the Commissioner that this new medical evidence shows, at best, a worsening of a condition and does not present evidence that would require a different RFC determination. As noted, to show materiality plaintiff must explain how the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. This, she has failed to do. Instead, plaintiff merely provides the conclusory assertion that it

is possible that she now meets a Listing and that the evidence *suggests* she would be precluded from performing work functions.  These statements do little to explain or demonstrate that a different result would have been reached had this evidence been available to the ALJ.  The ALJ was well aware of plaintiff's knee and osteoarthritis problems, as she discussed plaintiff's allegations on the subject (Tr. 31, 33) and objective medical evidence (Tr. 34).  A sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio Jan. 18, 2011) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)).  If plaintiff's condition seriously worsened after the administrative hearing, an appropriate remedy would be the initiation of a new claim for benefits as of the date that her condition rose to the level of a disabling impairment.  *Rollins v. Comm'r of Soc. Sec.*, 2016 WL 2853864, at *17 (N.D. Ohio May 16, 2016) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)); *Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990) (stating that the medical evidence which is "merely cumulative ... [is] not 'material' within the meaning of 42 U.S.C. § 405(g) [as it] contained nothing that would cause the ALJ to change his opinion.").

Plaintiff makes much of the fact that that Dr. Laker observed that plaintiff was using a rolling walker because at the hearing the vocational expert testified

36

that the use of a walker would be work-preclusive for plaintiff.  (Dkt. 16, at p. 23).

Dr. Laker did indeed note plaintiff's complaints, including that she used a walker.

(Tr. 11).  However, Dr. Laker said nothing of needing a walker to stand or

ambulate, nor did he state that plaintiff should continue to use the walker.  Instead,

Dr. Laker discussed with plaintiff the benefits of aerobic exercise and prescribed

physical therapy.  In sum, that plaintiff was using a walker at the time of her visit

with Dr. Laker does not establish that plaintiff is functionally limited by her usage

of the walker.  Dr. Laker did not opine on any functional limitations not already

encompassed in the RFC.  As such, the undersigned finds that this new evidence is

not material because it would not likely change the ALJ's decision.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 23, 2018                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 23, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
